UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE D. BAKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:17-cv-01194-JHE ) |
| L3 TECHNOLOGIES, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION[1]**

Plaintiff George D. Baker ("Baker") brings this action against Defendant L3 Technologies ("L3") alleging a discriminatory hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Doc. 1). Discovery is complete, and L3 has moved for summary judgment (doc. 17). The motion is fully briefed (docs. 18, 19, 21, 22, & 24). For the reasons stated below, L3's motion for summary judgment (doc. 17) is **GRANTED**.

**I. Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 11).

1

The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

### A. Baker's Employment at L3

L3 is a defense contractor that is headquartered in New York, New York, and with approximately 31,000 employees worldwide. (Doc. 19-1 at ¶ 4). L3 operates at Fort Rucker in Daleville, Alabama under a twenty-year-contract with General Dynamics to supply field support

for high-fidelity flight training simulators for the United States Army. (*Id.* at ¶5). L3 has a written policy prohibiting harassment and retaliation, which Baker received when hired in January 2005. (Doc. 19-1 at ¶¶ 9-11; doc. 19-2 at 100). The policy expressly requires employees to report any alleged harassment to their supervisor, Human Resources, or the L3 Hotline. (Doc. 19-1 at ¶¶ 9-11). L3 provided sexual harassment training to its employees every year, which Baker admits he received. (Doc. 19-2 at 30 (115:7-116:8)).

Baker is a white man and approximately sixty years old. (Doc. 19-2 at 3 (8:4-7)). Baker states he is homosexual, and the parties dispute whether L3 management was aware of this fact during his employment. (Doc. 19-3 at 14 (50:11-18); doc. 19-2 at 25 (93:14-21)). Baker began working for L3 in January 2005, as an Electronic Technician on flight training simulators in the RCTD division, initially assembling the simulators in his first three years and providing technical support on the simulators thereafter. (Doc. 19-1 at ¶ 12; doc. 19-2 at 9 (31:16-20); doc. 19-3 at 5 (15:10-14)). Baker typically worked with Steve Bingham and Jake Sammons from 6:00 AM through 2:30 PM. (Doc. 19-2 at 14 (51:6-21)). A second set of three Electronic Technicians typically worked from 8:00 AM to 4:30 PM. (*Id.* (51:22-52:7)). Baker was responsible for preparing eighteen flight training simulators to use in training for the Army's flight school students. (Doc. 19-2 at 4 (51:6-21)). The facility in which L3's Electronic Technicians worked at Fort Rucker is a primarily-male industrial work setting. (Doc. 19-3 at 24 (90:8-13)).

As an employee, Baker was described as being "mediocre," lacking "troubleshooting skills on the electronics," and having difficulties doing complex electronics" but was punctual. (Doc. 19-3 at 19-20 (72:10-73:8); doc. 19-4 at 5-6 (14:20-15:6, 18:3-4)). Baker received several disciplinary write-ups during this employment, including a written warning for failing to take off his hat in the building, as strictly required by the military general contractor, and verbal warnings

for displaying improper workplace temperament. (Doc. 19-3 at 20 (74:3-17); doc. 19-4 at 6 (18:8-19:21)). Baker admits that everybody, including himself, cussed in the workplace at L3. (Doc. 19-2 at 26 (100:1-5)). Baker's site manager from 2006-2015, Mark Smith ("Smith"), stated that Baker "could be a bully sometimes" and was also "loud" and "aggressive" (but not threatening) toward his coworkers. (Doc. 19-4 at 9 (30:23-31:12)). Nestor Torres ("Torres") Baker's site manager from 2015 through the remainder of this employment, testified that during a one-on-one meeting, Baker used "very nasty, derogatory word[s] to describe his peers, MF, those MFs." (Doc. 19-3 at 20 (75:3-16)).

The parties dispute whether Baker ever reported any complaints of harassment to Torres or Smith. (Doc. 19-2 at 17, 19 (64:10-65:19, 71:4-11); doc. 19-3 at 18 (65:7-20); doc. 19-4 at 8 (26:11-18)).

On April 15, 2016, Torres received notice from Army Sergeant First Class Jamil M. Wilson that employees of another contractor at Fort Rucker had reported observing Baker watching pornography and pleasuring himself in the public restroom at the Fort Rucker base. (Doc. 19-1 at ¶ 13). Baker admits "sometimes [he] would accidently click on a [news] video and it would come up and [his] cell phone would be on full blast" while in the bathroom stall." (Doc. 19-2 at 20 (76:5-8)). Baker also admits he commonly made loud "grunting" noises due to hemorrhoids when using the restroom, which "could be interpreted as masturbating." (*Id.* at 21 (77:4-22)). Torres informed L3's corporate office in New York about the report, and it was passed along from there to the central Human Resources office in Arlington, Texas. (Doc. 19-2 at 19 (71:17-72:16); doc. 19-3 at 22 (81:9-84:18)).

Rich Magill ("Magill"), then L3's Human Resources Director, headed to Fort Rucker shortly thereafter to conduct an investigation. (Doc. 19-5 at ¶ 3). Through the course of the

4

investigation, five witnesses (one L3 employee and four employees of another contractor) corroborated the report about Baker watching pornography and masturbating in the restroom on multiple occasions. (Doc. 19-1 at ¶14; Doc. 19-5 at ¶ 6). Additionally, Army Lieutenant Colonel Waldrop informed Magill that Baker was no longer permitted in the facility at Fort Rucker where Baker worked on the flight training simulators. (Doc. 19-5 at ¶ 7). Based on the investigation and the directive from the Army, L3 began the process of involuntarily terminating Baker's employment. (Doc. 19-5 at ¶¶ 8-9). Before Baker was terminated, he formally resigned on May 11, 2016. (Doc. 19-1 at ¶ 17; doc. 19-2 at 21 (78:12-20); doc. 19-5 at ¶ 11).

### B. Baker's Allegations of Harassment and Retaliation

Baker alleges three of his coworkers, Mike Prescott, Doug Campbell, and Jack Sammons, sexually harassed him. (Doc. 19-2 at 9-14 (31:21-50:12)). Baker testified that these individuals called him feminine names, including "Boy George" and "Denise" on at least a weekly basis throughout his employment. (*Id.* at 9-10, 13 (32:22-33:9, 48:9-14)). Baker also testified that Sammons would call him "sissy" from time to time in 2015 and later. (*Id.* at 19 (69:10-11)). Baker also alleges Prescott, Campbell, and Sammons made comments about his clothes and mannerisms, such as "Are those boy's/men's slacks or women's? Are you wearing capris?" (*Id.* at 23-24 (88:15-89-8)). Baker further testified that Campbell stated "You wear perfume. I wear cologne." And, that when Baker had his dog neutered and it squatted instead of hoisting its leg, Campbell responded, "Yeah, like his owner." (*Id.* at 11-12 (40:18-41:10)). At one point after Torres became Site Manager, Prescott commented that Baker "knows what a tossed salad is" in front of a group of coworkers in the conference room. (*Id.* at 14 (49:2-8)).

Baker claims he told Torres about the inappropriate comments monthly. (Doc. 19-2 at 19 (17:14-71:11)). Torres denies Baker reporting any type of harassment to him. (Doc. 19-3 at 18

5

(65:7-11)). Baker testified that he believes he was forced to resign because he complained about harassment a lot. (Doc. 19-2 at 24 (93:9-94:11)).

**C. Baker's EEOC Charges**

On July 1, 2016, Baker signed and filed an EEOC charge in the Birmingham Local Office alleging harassment/discrimination on the basis of his age, sex, and sexual orientation as well as retaliation against L3. (Doc. 22-1 at 36). Baker attempted to file a separate, but duplicative EEOC claim in the Mobile Local Office. (*Id.* at 38-40). The EEOC, which received the second claim on July 11, 2016, did not allow Baker to proceed on the duplicative claim because of the prior charge filed on July 1, 2016, in the Birmingham District Office. (*Id.*). The letter from the EEOC's Mobile Local Office explaining this instructed that Baker "continue to work with the Birmingham District Office as they process [his] allegations of employment discrimination."[2] (*Id.* at 38). Also, on July 11, 2016, Baker submitted a nearly identical charge to the Office of Federal Contract Compliance Programs ("OFCCP") for investigation.[3] (Doc. 22-1 at 42-43). The OFCCP began assisting with the investigation of Baker's charge in August 2016. (*See* doc. 1 at 10).

On February 7, 2017, Baker received the EEOC's Notice of Right to Sue, which the EEOC issued at Baker or his attorney's request. (Doc. 19-2 at 85). This EEOC Notice of Right to Sue letter was sent to Baker, with copies sent to L3 and Baker's attorney. (*Id.*). On May 16, 2017, the OFCCP issued its "Notification of Results of Investigation" (of the nearly identical allegations)

---

[2] This letter indicates a copy was sent to Baker, Baker's attorney, and L3. (Doc. 22-1 at 38).

[3] According to its mission statement, the OFCCP "protect[s] workers, promote[s] diversity and enforce[s] the law. OFCCP holds those who do business with the federal government (contractors and subcontractors) responsible for complying with the legal requirement to take affirmative action and not discriminate on the basis of race, color, sex, sexual orientation, gender identity, religion, national origin, disability, or status as a protected veteran." *Department of Labor, Office of Federal Contract Compliance, About OFCCP*, https://www.dol.gov/ofccp/aboutof.html.

with an "Information Related to Filing Suit Under Title VII and Title I of the ADA" addendum attached. (Doc 21-1 at 134-40). This addendum included notification about the time limitations to sue under the relevant statutes. (*Id.* at 139-40)

### III. Analysis

A plaintiff may not bring a Title VII action more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge, which is generally the receipt of the EEOC's right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1) (1994); *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000). It is the plaintiff's burden to establish timeliness. *See Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002). A second notice tolls the limitation period ***only if*** the EEOC issues such notice pursuant to a reconsideration on the merits under 29 C.F.R. § 1601.21(b), (d). *Santini*, 232 F.3d at 825 (citing *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997)) (emphasis added). Furthermore, the receipt of a second EEOC notice does not constitute grounds for equitable tolling where a party has actual knowledge of the first notice. *Id.* (citing *Ball v. Abbott Advertising, Inc.*, 864 F.2d 419, 421 (6th Cir. 1988)).

L3 argues the OFCCP's May 16, 2017 Notification of Results of Investigation, which included a notice about private suit rights, does not provide Baker a reprieve from this precedent. (Doc. 18 at 16). L3 explains that the EEOC and OFCCP coordinate investigations of alleged violations of the equal employment opportunity laws, and the agencies' Memorandum of Understanding stipulates that the OFCCP shall act as the EEOC's agent for "all charges/complaints of employment discrimination filed with the OFCCP alleging a Title VII basis" and those charges "shall be received as complaints/charges simultaneous dual filed under Title VII." 64 F.R. 17664, 1999 WL 198054 (April 12, 1999). Thus, L3 argues, Baker's subsequently filed OFCCP

complaint should be construed as a "simultaneously dual-filed" EEOC charge that does not create an independent right to sue after the ninety-day period after the initial right to sue letter has expired. (Doc. 18 at 17).

Baker's only response to L3's timeliness argument is based on a mischaracterization of the evidence and includes no citation to authority. (Doc. 21 at 5-6). Baker points out that this lawsuit is brought under Title VII of the Civil Rights Act of 1964, and does not include any claims for age discrimination pursuant to the Age Discrimination Employment Act of 1967. (*Id.* at 5). Baker contends that the February 7, 2017 EEOC Right to Sue Letter states: "your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receive of this Notice" and the May 16, 2017 OFCCP notice of rights letter states the "Complainant may file a lawsuit against the contractor under Title VII of the Civil Rights Act of 1964, as amended." (*Id.* 5-6). Essentially, Baker contends the EEOC's Notice of Right to Sue Letter only gave him the right to sue under the Age Discrimination Employment Act of 1967. (*Id.*). This is incorrect.

While Baker has not misquoted the EEOC's February 7, 2017 Right to Sue Letter, he completely ignores the first half of the notice. (*See* doc. 19-2 at 85). The February 7, 2017 Right to Sue Letter states as follows:

> NOTICE TO THE PERSON AGGRIEVED:
>
> Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in federal court or state WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge with be lost. (The time limit for filing suit based on a claim under state law may be different.)
>
>     X    More than 180 days have passed since the filing of this charge.
>
>     __    Less than 180 days have passed since the filing of this charge, but I

> > Have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.
>
> > X    The EEOC is terminating its processing of this charge.
>
> > __    The EEOC will continue to process this charge.
>
> Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:
>
> > X    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-referenced number will be lost.
>
> ….
>
> Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required). EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

(Doc. 19-2 at 85). It is apparent from the plain language of the February 7, 2017 Right to Sue Letter that it applied to both Title VII employment discrimination claims and ADEA claims.

Additionally, there is nothing in the record to indicate Baker's initial EEOC Charge was limited to age discrimination. To the contrary, Baker marked boxes to indicate both sex-based and age-based discrimination as well as retaliation. (Doc. 22-1 at 36). Baker specifically alleges he "was harassed, discriminated against and terminated because of [his] age, sex, sexual orientation and in retaliation for objecting to discrimination and harassment" and describes instances of both age and gender-based discrimination. (*Id.*).

Although it is clear the OFCCP had not issued its findings from its investigation of Baker's

Title VII allegations,[4] Baker makes no evidence-based argument to create a genuine issue of fact as to timeliness. The undisputable evidence establishes that Baker did not file this action within ninety days of receiving the EEOC Right to Sue Letter on February 7, 2017. Baker filed this action on July 17, 2017, which was more than five months after receiving the letter. The express language of the letter, which Baker and/or his attorney requested be issued, gives notice that a Title VII or ADEA lawsuit must be brought within ninety days of receipt. (Doc. 19-2 at 85). Baker does not dispute receiving this letter and does not disputing failing to file a lawsuit within ninety days of receipt. He also does not dispute that the allegations presented to the EEOC and the OFCCP were the same. Furthermore, there is no argument as to why the scope of his Right to Sue Letter should be limited in anyway, no argument for equitable tolling, and no argument for the OFCCP having authority to extend or revive the time to file suit. For these reasons, Baker fails to satisfy his burden to establish timeliness. Having determined that Baker's claims are untimely, the undersigned does not reach the merits of his claims.

## IV. Conclusion

There being no genuine issue of material fact, the evidence establishes that Baker did not file this lawsuit within ninety days of receiving adequate notice that the EEOC had dismissed his charge, i.e., the initial Right to Sue Letter. Accordingly, Baker has failed to carry his burden to establish the timeliness of his Title VII claims, and this action will be dismissed. A separate order

---

[4] On May 16, 2017, the OFCCP issued the results of its investigation. (Doc. 21-1 at 134-40). The OFCCP found sufficient evidence that Baker was subjected to a pattern and practice of harassment in the workplace, and that L3 failed to discuss anti-harassment with procedures with employees or take any other corrective action. (*Id.* at 137). OFCCP did not find sufficient evidence to show that Baker was terminated because he reported harassment or that his termination was based on his sex and/or sexual orientation. (*Id.*). As a result, OFCCP required L3 to enter into a Conciliation Agreement to ensure a workplace free from harassment. (*Id.*).

will be entered.[5]

DONE this 21st day of June, 2019.

*[signature]*

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[5] Finding no bad faith, the undersigned declines to award fees or costs in this action. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).